(No. 2246— )

GEORGE FRANKLIN GARBUTT, ADMINISTRATOR OF THE ESTATE OF WESLEY GARBUTT, DECEASED, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 9, 1935.*
*Rehearing granted February 12, 1935.*
*Opinion on rehearing filed September 15, 1937.*

WINSTON, STRAWN & SHAW, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

On August 10th, 1933 Mr. A. S. Dougherty, maintenance patrolman on Section 133, S. B. I. Route 172, together with his helper, was cutting and burning weeds along the right-of-way of said highway about two miles north of Libertyville in Lake County. The highway at that point extended in a northerly and southerly direction and consisted of a 20-foot concrete roadway with dirt shoulders. In some manner the fire was communicated to a tree situated sixteen feet west of the west side of the concrete roadway. This tree was a spreading oak tree about forty feet in height and thirty-seven inches in diameter at the base and leaned toward the roadway. It was a bee tree which was decayed at the bottom, and was hollow for some distance up the trunk. The hole in which the bees entered was about ten feet above the base of the tree.

Mr. Dougherty and his helper tried to put out the fire with a jug of water, but without result. They remained in the vicinity until about four-thirty or five o'clock p. m., but there were so many bees there that it was difficult to do anything further at that time. Both men saw the tree again the next day and it was still burning. The next day (Saturday, August 12th) the tree was still burning, and the helper poured two eight-gallon cans of water into it, but it still continued to smoulder. On August 17th, 1933 about five o'clock p. m. a windstorm came up and blew fiercely for a short time

and broke the tree off about nine feet from the ground, just at the point where the bees had entered.

Just as the tree was about to fall, claimant's intestate, Wesley Garbutt, was driving along S. B. I. Route 172 in a southerly direction in his Ford car with the top down, and just as he was opposite the tree, it toppled directly across the pavement and onto the car in which he was riding. The tree rebounded, and the rebound released the car which thereafter continued down the road 100 or 200 feet and ran into a ditch, throwing Mr. Garbutt out as it climbed the embankment.

Some people who were approaching from the opposite direction stopped and picked Garbutt up and took him to the hospital in Libertyville. He was unconscious and bleeding profusely and died the next day as the result of the injuries received when he was struck by the tree.

Said decedent left him surviving his father, his mother, a brother and a sister, as his only heirs.

The father, George Franklin Garbutt, was appointed administrator of the estate and filed his claim herein on September 14th, 1933 to recover the damages claimed to have been sustained by the next of kin by reason of the death of said decedent.

The Attorney General has moved to dismiss the case for the reason that the doctrine of respondeat superior does not apply to the State in the exercise of its governmental functions and that therefore the State is not liable for the negligence of its servants and agents, if any—in this case.

The claimant admits that there is no liability on the part of the State for the negligence of its servants and agents in the exercise of its governmental functions, but claims that an award should be made to the claimant on the grounds of equity and good conscience.

The same contention was made by the claimant in the case of *George Ira Curry* vs. *State,* No. 2412, decided at the present term of this court. In that case we said:—

"We are aware of the fact that during a certain period in the history of this court, awards were made in cases where the State was not legally liable, and which were sought to be justified on the grounds of what was known as the doctrine of equity and good conscience. However, the court as now constituted, has not seen fit to follow the decisions just re-

ferred to, but has followed the earlier decisions of the court to the effect that the provisions of Section 6 of the Court of Claims Act, and particularly paragraph four (4) thereof, which provides that this court shall have power to hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, which the State as a sovereign commonwealth should, in equity and good conscience, discharge and pay;—does not increase or enlarge the liability of the State, but merely provides a forum wherein claims against the State may be adjudicated.

''This question was exhaustively considered in the case of *Crabtree* vs. *State*, 7 C. C. R. 207, in which the authorities on the question from the time of the creation of the court down to the date of the hearing, were analyzed and considered. After a consideration of the authorities on the question, we reached the following conclusion:

"We conclude, therefore, that Section four (4) of Paragraph six (6) of the Court of Claims Act, which provides as follows, to-wit: The Court of Claims shall have power: 'to hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, which the State as a sovereign commonwealth, should, in equity and good conscience, discharge and pay'; merely defined the jurisdiction of the court, and does not create a new liability against the State, nor increase or enlarge any existing liability; that the jurisdiction of this court is limited to claims in respect of which the claimant would be entitled to redress against the State either at law or in equity, if the State were suable; that this court has no authority to allow any claim unless there is a legal or equitable obligation on the part of the State to pay the same, however much the claim might appeal to the sympathies of the court; that unless the claimant can bring himself within the provisions of a law giving him the right to an award, he cannot invoke the principles of equity and good conscience to secure such an award.

"The claimant having failed to bring himself within the provisions of the law entitling him to an award, there is nothing this court can do but deny the claim."

What we said in the Curry case applies with equal force to this case. The legislature has not enacted any law making the State liable for the negligence of its servants and agents in connection with the maintenance of its hard-surfaced roads, and there being no legal liability on the part of the State, this court has no jurisdiction to enter an award.

The death of claimant's intestate under the circumstances set forth in the complaint is very regrettable, and the claim filed herein appeals very strongly to the sympathies of the court, but as stated in the case of *Morrissey* vs. *State*, 2 C. C.

R. 254, we do not make the law and can only interpret it as we find it, and much as we would like to enter an award for the claimant in this case, we must reject the claim.

It is therefore ordered that an award be denied and the case dismissed.

## ADDITIONAL OPINION ON REHEARING.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Rehearing having been allowed on the petition of the claimant, he urges that the facts in the record show that the servants and agents of the respondent were guilty of gross and wanton negligence; that the plaintiff's intestate was free from contributory negligence; and that under such circumstances, an exception exists to the general rule that the State is not liable for the acts of its servants and agents under the doctrine of respondeat superior.

Even if it be conceded that the facts in the record do show that the servants and agents of the respondent were guilty of gross and wanton negligence, and that the claimant's intestate was free from contributory negligence, still under the repeated decisions of the court, the claimant is not entitled to an award.

As stated in the original opinion, during a certain period in the history of this court, awards were made in certain cases in which there was no legal liability on the part of the State. In the earlier cases so decided, the facts appealed very strongly to the sympathies of the court, and the awards there made were attempted to be justified on the grounds of "equity and good conscience."

Thereafter the court apparently recognized the dangerous tendency of such decisions, and the extent to which they were being carried, and gradually began to get back to the earlier decisions of the court, to the effect that this court has no authority to allow an award in any case unless there would be a legal liability on the part of the State if the State were suable.

In the course of such transition, awards were allowed in certain cases where the claimant was free from contributory negligence, and the servants and agents of the respondent were guilty of gross and wanton negligence, and such awards

were attempted to be justified on the ground that such cases constituted an exception to the general rule that the State is not liable for the acts of its servants and agents under the doctrine of respondeat superior.

If the State is not liable for the ordinary negligence of its servants and agents, there is no principle of law under which it can be held liable for the gross or wanton negligence of such servants and agents, in the absence of a statute making it so liable. The purported exception has no basis in law, and is no longer recognized by this court.

The rule as laid down in the case of *Crabtree* vs. *State*, 7 C. C. R. 207, and as set forth in the original opinion herein has been followed in nineteen cases reported in the last published volume of the reports of this court (Volume 8), as well as in many more cases decided since the publication of such volume, and must now be considered as the well-established rule of this court.

For the reasons above set forth, award must be denied. Award denied. Case dismissed.